UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNIE RICCIO, on behalf of her minor child STEFANIE ANDREE,<br>    Plaintiff<br><br>v.<br><br>NEW HAVEN BOARD OF EDUCATION,<br>    Defendant | CIVIL ACTION NO.<br>3:05-CV-00494 (JCH)<br><br><br><br>DECEMBER 22, 2006 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 18]**

The plaintiff, Connie Riccio, brings this action on behalf of her minor child, Stefanie Andree, pursuant to Sections 1681-1688 et seq. of Title 20 of the United States Code (hereinafter called "Title IX") against the defendant, New Haven Board of Education ("Board"). Riccio alleges that the Board violated her daughter's right to be free from sexual harassment. This court has federal question and supplemental jurisdiction over this action pursuant to Section 1331, 1343(3) and 1367(a) of Title 28 of the United States Code.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Board has filed a Motion for Summary Judgment (Doc. No. 18). For the following reasons, the defendant's motion is DENIED.

I. **STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 106 S. Ct.

1

2505 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 255. Further, the non-moving party must present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

II. **BACKGROUND**

For the purposes of this motion, the court accepts as true undisputed facts and resolves disputed facts in favor of Riccio where she provides evidence to support her allegations. The court summarizes below only the facts relevant to the defendant's motion for a summary judgment.[1]

---

[1] Riccio's Complaint contains a claim for emotional distress. Compl. at 10. The Board suggests in a footnote in their Motion for Summary Judgment (Doc. No. 18) that Riccio fails to adequately set forth all the necessary elements under Connecticut law for emotional distress. In her Complaint, the plaintiff need only make a short, plain statement of the claim. F.R.Civ.P. 8 (a) (2). Riccio has satisfied this requirement.

The Board has not moved for summary judgment regarding Riccio's emotional distress

Riccio is the mother of the minor plaintiff, Stefanie Andree. During the 2003-2004 school year, Andree attended eighth grade at the Nathan Hale School in New Haven, Connecticut. Jennifer Barnebrie and Lea Lucatino were also eighth grade students at Nathan Hale School during the 2003-2004 school year. At all times relevant to this claim, Kim Johnsky was principal of the Nathan Hale School. Shortly after the 2003-2004 school year began, Lucatino and other students began calling Andree derogatory names including "bitch," "dyke," "freak," "lesbian," and "gothic."[2] L.R. 56a (1) Stat. at ¶ 6 (Doc. No. 18-3).[3] Andree and Barnebrie were close friends and socialized primarily with each other. L.R. 56a (1) Stat. at ¶ 14. Lucatino and others called Andree and Barnebrie "lesbians," "dykes," "gay," and "lesbian lovers." L.R. 56a (1) Stat. at ¶ 17. The Board asserts that much of the name calling directed at Andree was a result of her nonconforming choice of dress and not because of Andree's gender. Def. Mem. Supp. at 10 (Doc. No. 18). However, much of the taunting that Andree received was also directed at Barnebrie, who did not dress in the gothic style. L.R. 56a (2) Stat. at ¶ 12.

Andree testified in her deposition that it was not uncommon for students to call each other "gay" in a typical adolescent banter that implied the target of the name calling was being silly or "lame." However, Andree understood that students who called her "gay" intended to imply that she was a homosexual. Andree Depo. at 94, 95

---

claim. As such, the court treats the motion as a motion for partial summary judgment and does not consider Riccio's claim for emotional distress in this Ruling.

[2]Andree dressed in a style known as "Gothic," meaning she wore mostly black clothing. L.R. 56a (1) Stat. at ¶ 10.

[3]The defendant's Local Rule 56 (a) (1) Statement (Doc. No. 18-3) and the plaintiff's Local Rule 56 (a) (2) Statement (Doc. No. 22-2) will be cited as "L.R. 56a (1) Stat." and "L.R. 56a (2) Stat.," respectively.

Andree also testified that the name calling directed at her, consisting of the derogatory epitaphs for a female homosexual, did not begin until Lea Lucatino initiated it. Prior to Lucatino's initiation of the offending speech, Andree knew her choice of dress was different from other students, but students did not taunt her for it in the manner that Lucatino did. Id. at 82 . The name calling on the part of Lucatino and a dozen or so other eighth grade students occurred on a near daily basis and was abusive and hurtful to Andree. Def. Mem. Supp. at 9, 10, 13.

The harassment occasionally included physical contact, including one incident in which Lucatino threw a pencil at Andree during lunch period. At other times, Andree had paper balls tossed at her during class time. L.R. 56a (1) Stat. at ¶¶ 54, 56. In addition to the verbal taunting and the throwing of objects, Lucatino and another student threatened Andree and challenged her to physical fights. Id. at ¶ 64.[4] During one session with the school's social worker, Lucatino picked up a dictionary and threatened to throw it at Andree. These sessions were intended to mediate and discourage the hostility between Lucatino and Andree. However, the sessions ended because Lucatino would become violent and loud, prompting school staff to request the termination of the session. Id. at ¶ 4. The name calling spilled over into the classroom, where students would call Andree "gay." L.R. 56a (2) Stat. at ¶ 11. Andree and Lucatino attended Math and English classes together, during which Lucatino would taunt Andree with name calling. After repeated requests from Andree, the students

---

[4] On April 29, 2004, Lucatino and Andree did engage in a physical confrontation, after school and off school premises, for which both girls were cited for breach of peace and Lucatino's mother was arrested. Johnsky suspended both girls from school for two days for participating in the fight. L.R. 56a (1) Stat. at ¶ 68, 70, 71.

4

seats were moved to opposite sides of the classroom.  L.R. 56a (1) Stat. at ¶ 32.

In September or October of 2003, Riccio notified the school administration that Lucatino repeatedly made fun of Andree.  Id. at ¶ 19.  On or about October 27, 2003, Assistant Principal Balsamo met with Andree, Barnebrie, and Lucatino and asked them to end the name calling.  Id. at ¶ 22.  The behavior stopped for approximately one month, at which time Lucatino resumed the name calling.  Id. at ¶ 24.  At this point, more students joined Lucatino in the name calling and for the remainder of the school year more than a dozen students called Andree and Barnebrie "dyke," and "lesbian lover."  When the name calling resumed, Andree reported it to Johnsky.  Id. at ¶ 30.  Also, beginning in December of 2003 or January of 2004, Mrs. Keogh, the school's guidance counselor, began meeting with Lucatino and Andree to discuss the problems the two girls were having with each other. Id. at ¶ 34.  These meetings were short lived because Lucatino informed Keogh that Lucatino would no longer meet and speak to Andree.  Id. at ¶ 36. Additionally, beginning in late October, Andree met, approximately every other week, with Ms. Sawyer-Karnoff, a school social worker, who counseled Andree on coping with the name calling.  Id. at ¶ 37.  On occasion, Sawyer-Karnoff met with Lucatino and Andree.   Lucatino contended that Andree called Lucatino a "bitch" at those meetings.  During the meetings with the Sawyer-Karnoff, Lucatino would threaten Andree.  L.R. 56a (2) Stat. ¶ 43.

The derision and name calling by Lucatino ended after the April 29, 2004 fight.  L.R. 56a (1) Stat. at ¶ 76.  At that point, school officials transferred Andree from the classes she shared with Lucatino and no longer allowed Lucatino to be unsupervised before school, after school, or during class breaks.  L.R. 56a (1) Stat. at ¶ 73.  During

the 2003-2004 school year, Johnsky suspended several students for bullying behavior; however, she did not feel that Lucatino's behavior warranted harsher punishment because it was not serious enough. L.R. 56a (1) Stat. at ¶¶ 82, 83. Other students continued to harass Andree through the remainder of the school year. L.R. 56a (2) Stat. at ¶ 10. Andree graduated from Nathan Hale and moved onto the Community Magnet High School, where she continued to be called "gothic," "freak," "Nazi," "bitch," and "gay." L.R. 56a (1) Stat. at ¶ 86.

III. **DISCUSSION**

The defendant alleges in its motion for summary judgment that Andree's Title IX claim fails for three reasons. First, it argues that there is no genuine issue of material fact as to whether the harassment that Andree suffered was based on her sex. Second, the harassment was not sufficiently severe, pervasive and objectively offensive to sustain a Title IX claim. Lastly, Andree fails to establish that the harassment denied her access to her school's educational resources and opportunities. The court finds that Andree has presented genuine questions of fact as to whether the barrage of verbal abuse she suffered on a daily basis for an entire school year rises to the level of an actionable Title IX sexual harassment claim.

A. Title IX

Congress promulgated Title IX to discourage educational institutions, who receive federal funding, from engaging in gender-based discriminatory practices. Title IX explicitly set forth that, "no person, on the basis of sex, shall be excluded from participation in, denied the benefits of or be subjected to discrimination under any education program or activity receiving federal funding." Under Title IX, the aggrieved

party has a right of action for injunctive relief or monetary damages.  Murray v. NYU College of Dentistry, 57 F.3d 243, 248 (1995).

In a Title IX claim for gender discrimination based on sexual harassment of a student, an educational institution may be held liable under standards similar to those applied in Title VII claims for sexual harassment.[5]  Id. at 249; see also Davis v. Monroe County Board of Ed. et al., 526 U.S. 629, 640.  It is well settled that students have a right, under Title IX, to be free from peer-to-peer sexual harassment and damages can lie against a school system in cases of student-to-student sexual harassment where the school acts with deliberate indifference to known acts of harassment.  Davis, 526 U.S. at 646, 647.

Whether gender-oriented conduct rises to the level of actionable harassment depends on a "constellation of surrounding circumstances, expectations and relationships."  Id. at 651; see also Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1997).  The Supreme Court in Davis recognized that children are not like adults and often engage in behavior that adults would find inappropriate and offensive.  Davis, 526 U.S. at 652.  As such, the Davis Court directed that, in the context of student-on-student harassment, damages are only available where the behavior is so severe, pervasive, and objectively offensive that it denies the victim equal access to education.  Id. at 650.

---

[5]The analysis of Title VII claims for sexual harassment is applicable to Title IX claims for sexual harassment.  Applying Title VII standards, educational institutions may be held liable for Title IX claims for gender discrimination based on sexual harassment of a student.  Murray v. NYU College of Dentistry, 57 F. 3d 243 (2d Cir. 1995); see also Franklin v. Gwinnett County Public Schools, 503 U.S. at 73 (1992).

B.  <u>Gender-Based Sexual Harassment</u>

The Board contends that Andree was not targeted by her fellow students for her gender, but for several alternative reasons including personal animosity toward Andree for befriending Barnebrie and a general animosity toward Andree for her non-conforming type of dress.  Def. Mem. at 9, 10.  The Board further argues that, as a matter of common sense, a reasonable jury could not conclude that female students calling female students "bitch" would amount to actionable harassment, but rather would be viewed as typical adolescent taunting.  Def. Reply. at 3.  Lastly, the Board argues that the majority of the name-calling and ridicule targeted at Andree contained pejorative homosexual references.  As such, the Board contends that the thrust of the slurs were of a sexual orientation nature and not gender specific.  <u>Id.</u> at 2.  Therefore, the Board argues that Andree does not have a claim for sexual harassment because Title IX does not provide a remedy for discrimination based on sexual orientation.  Def. Mem. at 10.[6]

In the Board's argument that Andree's claim fails on the ground that the teasing is somehow mitigated because her harassers were of the same sex, the Board relies heavily on the Supreme Court's ruling in <u>Oncale</u>, a Title VII workplace sexual harassment claim.  Def. Mem. at 10.  At the district and circuit levels, the courts held

---

[6]Title VII does not provide a remedy for sexual orientation discrimination.  <u>Simonton v. Runyon</u>, 232 F. 3d 33, 36 (2d Cir. 2000).  The Board carries this holding over to Title IX, implying that Title IX does not provide a cause of action for sexual orientation discrimination in the educational setting.  <u>Id.</u> at 10.  The court notes that Riccio does not raise any claims as to her minor chid having suffered discrimination based on her sexual orientation.  In fact, Riccio's Complaint states that the minor child is not a homosexual.  Compl. at 6.  Since this claim has not been raised by the plaintiff, the court will not address the question whether a sexual orientation claim under Title IX is actionable.

that Mr. Oncale had no cause of action under Title VII for harassment by male co-workers.  On appeal, the Supreme Court clearly established that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII.  Oncale, 523 U.S. at 82.  The Supreme Court cautioned in Oncale that common sense and an appropriate sensitivity to social context is necessary to distinguish between simple teasing among members of the same sex and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.  Id.  In Oncale, the Supreme Court describes an actionable same-sex harassment scenario in which a female employee harasses another female employee with sex-specific derogatory language based on a general hostility to women in the work place. Id. at 80.  It is not difficult, given that analyses, to conclude that a school-based scenario in which a female student harasses another female student, using sex-specific, derogatory language, could be from a general hostility toward other female students and as such is an actionable claim.[7]

      Despite the Board's assertion that Oncale precludes Andree's claim because the slurs were largely regarding sexual orientation, Oncale is analogous to Andree's claim.  In Oncale, the plaintiff was a male being harassed physically and verbally by other males.  The derogatory language directed at Mr. Oncale was homosexual in its nature, as in Andree's case.  Id. at 77.   Despite the language being of a homosexual nature in Oncale, the Supreme Court concluded that the harassment constituted sexual

---

[7] While the court cannot and does not, rely on Doe, ex. rel. A.N. v. E. Haven Bd. of Educ., 2006 U.S. App. Lexis 25533 (2d Civ. 2006), it notes the similarity between this case and Doe.

harassment.  Id. at 82.

Further support for this notion that language, with sexual orientation overtones, amounts to gender discrimination can be found in the Department of Education's Office of Civil Rights (OCR) Revised Sexual Harassment Guidance.[8]  The OCR Guidance states that:

> [G]ender based harassment, including that predicated on sex-stereotyping is covered under Title IX if it is sufficiently serious to deny or limit a student's ability to participate in or benefit from the program.  Thus, it can be discrimination on the basis of sex to harass a student on the basis of that victim's failure to conform to stereotyped notions of masculinity and femininity . . . [w]e also note that sufficiently serious harassment of a sexual nature remains covered by Title IX as explained in the guidance, even though the hostile environment includes taunts based on sexual orientation.

U.S. DEPARTMENT OF EDUCATION, OFFICE OF CIVIL RIGHTS, REVISED SEXUAL HARASSMENT GUIDANCE: HARASSMENT OF STUDENTS BY SCHOOL EMPLOYEES, OTHER STUDENTS, OR THIRD PARTIES (2001).  The language set forth in the OCR Guidance and the holding in Oncale clearly support the conclusion that a female student, subjected to pejorative, female homosexual names by other female students, can bring a claim of sexual harassment under Title IX.

Andree is suing the Board for tolerating and failing to cure a pattern of sexual harassment, of which she asserts she is a victim. The verbal taunting targeted at Andree is clearly gender-oriented language.  If not for her status as a female, a

---

[8] In its opinion in Davis, the Supreme Court looked to the Department of Educations's Office of Civil Rights promulgation of Title IX guidelines for guidance.  The OCR has set forth administrative guidelines for its own use in determining whether an educational institution has violated the rules set forth in Title IX.
   The OCR's guidance constitutes a body of informed judgment from the federal agency charged with administering Title IX's policies.  While it is not binding on this court, this court can look to the OCR for guidance. Skidmore v. Swift, 323 U.S. 134, 139-140 (1944).

reasonable trier of fact could conclude that Andree would not have been called the offending slurs.  As such, Andree, a female student, targeted by other female students and called a variety of pejorative epithets, including ones implying that she is a female homosexual, has established a genuine issue of fact as to whether this harassment amounts to gender-based discrimination, actionable under Title IX.

    C.  <u>Pervasive, Severe and Objectively Offensive</u>

The Board argues that the harassment suffered by Andree, <u>albeit</u> hurtful and unfortunate, was not sufficiently pervasive, severe, or objectively offensive to amount to a claim for peer-on-peer sexual harassment.  In <u>Davis</u>, the Supreme Court cautioned that peer-on-peer sexual harassment is subjected to a more rigorous test than employee harassment claims under Title VII.  Teasing involving offensive names targeting differences in gender does not automatically satisfy the severe, pervasive, and objectively offensive requirement.  <u>Davis</u>, 526 U.S. at 652.  The situation needs to be viewed as a whole, keeping in mind that students often engage in insults, banter, teasing, shoving, pushing and gender-specific conduct that can be upsetting to the student receiving it, but it does not amount to an actionable Title IX claim.  <u>Id.</u> at 651, 652.  Only conduct that is pervasive, severe, and objectively offensive -- to the point that it denies the victim equal access to educational benefits -- arises to a claim under Title IX.  <u>Id.</u> at 651.

In its Guidance, the OCR suggests looking to the type, frequency, and duration of the conduct.  Defendant classifies the harassment that Andree suffered as purely verbal.  Def. Mem. In Supp.at 12.  As such, the Board suggests that the verbal abuse did not itself satisfy the severe, pervasive, and objectively offensive test.   However,

Andree testified to more than verbal abuse.  There were days when students threw paper balls at her during class periods, and one incident occurred during lunch when Lucatino threw a pencil at Andree.  The sessions between Lucatino and Andree with the social worker were hostile in their nature, with Lucatino threatening and yelling at Andree.  One such session involved Lucatino picking up a dictionary and threatening to throw it at Andree.  Additionally, Lucatino and another student would often challenge Andree to physical confrontations.

     The term "pervasive" implies that something is widespread.  The Board contends that because the name-calling extended into Andree's ninth grade school year that it is merely evidence of adolescent antics.  However, a jury could reasonably find that the fact the name-calling transcended schools signifies a systemic problem within the district and amounts to a widespread issue of discrimination.  Furthermore, the conduct could also be deemed pervasive because it continued throughout the school year.  This was not a single act of teasing, or even a few  incidents spanning only a short time period.  Andree was targeted nearly every school day, in class, in-between classes, and at lunch.  The conduct spilled over into counseling sessions designed to end to the harassment.  Andree faced further verbal assault until she and Riccio requested the counseling meetings end.

     The OCR's Guidance also suggests that the number of students involved is a reasonable way to measure the severity of the harassment.  These incidents were often group motivated, in which Andree was targeted by more than a dozen students.  The harassment was public, in open classroom situations, or hallways when students were congregated between class.  These were not isolated incidents; they were near daily

occurrences in which Andree would attend school reasonably sure she would be harassed again. In this circumstance, a reasonable trier of fact would conclude that the harassment in this case amounted to severe, pervasive, and objectively offensive conduct.

      D.  <u>Denial or Exclusion from Educational Opportunities</u>

The Board contends that Andree was not excluded or denied access to educational opportunity because she maintained good grades and was only in two classes with the primary antagonist. To satisfy this element, a student need only establish that the sexual harassment was severe, pervasive, and objectively offensive to the point that it undermined and detracted from Andree's educational experience and that she was denied equal access to an institution's resources and opportunities. <u>Davis</u>, 526 U.S. at 651. An evidentiary link between the harassment and access to educational services, balanced with the persistence and severity of harassment, can work to establish a disadvantaged learning environment for the victim. <u>Davis</u>, 526 U.S. at 652.

Andree's grades were good and did not suffer. However, she testified to a disrupted learning environment in which students would target her during classroom time with verbal taunts and objects thrown at her. Educational resources such as counseling for coping with the harassment were denied her, when during such sessions the primary aggressor continued to threaten her despite the presence of a supervising school official. The daily verbal harassment combined with specific incidents of physical harassment are sufficient, if believed by a jury, to support a finding of a denial of educational opportunities.

13

Damages in private actions are limited to cases involving a systemic effect on educational programs. <u>Davis</u>, 526 U.S. at 652. Andree presents evidence of daily, consistent, and systemic abuse transcending many aspects of her education, including class instruction, the social atmosphere of passing to classes in the hallway, lunch time, free periods and structured counseling sessions. As such, a trier of fact could reasonably conclude that Andree's ability to access the educational resources of Nathan Hale Middle School was sufficiently impaired and denied because of the level of harassment she received by her peers.

## IV. CONCLUSION

Based on the foregoing, the Board's Motions for Summary Judgment (Doc. No.18) is DENIED.

**SO ORDERED**

Dated this 22nd day of December, 2006, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge